UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Myron Denny,

    Plaintiff,

vs.

The Metropolitan Council, Metropolitan Transit Police, Kham Yang, Angela Kruyer, all individuals in their individual and official capacities,

    Defendants.

COMPLAINT WITH JURY TRIAL DEMAND.

42 U.S.C. Sec. 1983 Action

---

1. Plaintiff seeks money damages and equitable relief from Defendants for violating his constitutional rights, and injunctive relief to prevent injury to himself and the public in the future. He also brings forward supplemental claims for violations of Minnesota state law.

2. Plaintiff was the victim of excessive force by Defendants Kham Yang and Angela Kruyer in violation of the Fourth Amendment to the U.S. Constitution and Minnesota state tort laws. The aforementioned individual defendants were employees, actors and agents of the Metropolitan Council/Transit Authority and for all times herein were acting under color of State Law and in the course and scope of their official duties. They are sued in their individual and official capacities.

3. Plaintiff brings suit under 42 U.S.C. § 1983.

4. Plaintiff has served notice of his state law claims in compliance with Minn. Stat § 466.05.

5. This Court has jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), and 42 U.S.C. §§ 1981, 1983, and 1988.

6. This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

7. This action arises under the United States Constitution as applied to state and/or local authorities through 42 U.S.C. § 1983.

## VENUE

8. Venue is proper in this district based on 28 U.S.C. § 1391(b), as Defendants are residents of this district and the acts or occurrences giving rise to these claims occurred in this district.

## PARTIES

9. For all times material herein, Plaintiff, Myron Denny is a natural person and resident of Hennepin County, Minnesota. Myron Denny is an American Indian and a citizen of the RED LAKE INDIAN NATION, DOMICILED IN MINNESOTA.

10. Defendants are all, upon information and belief, Minnesota municipal entities and/or individual members of law enforcement agencies, in an appointed or elected capacity.

11. For all times material herein, Defendant Metropolitan Council (the "Metropolitan Council") is a regional government agency established by the Minnesota Legislature in 1967 with jurisdiction in the metropolitan area as a public corporation and political subdivision of the state. Minn. Stat. § 473.123 sub. 1. Plaintiff bases all

applicable claims as to Defendant Metropolitan Council on the doctrines of *respondeat superior* or vicarious liability, and municipal liability pursuant to *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

12. For all times material herein, Defendant Metropolitan Transit Police Department ("Transit Police") is a regional law enforcement agency authorized by the Minnesota Legislature, and established under authorization by Defendant Metropolitan Council in 1994. Transit Police operate under the direction and control of the Metropolitan Council with jurisdiction in the metropolitan area as a law enforcement agency of the Metropolitan Council. Minn. Stat. § 473.407 sub. 1. Plaintiff bases all applicable claims as to Defendant Metropolitan Transit Police on the doctrines of *respondeat superior* or vicarious liability, and municipal liability pursuant to *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

13. On or about July 8, 2018, Mr. Denny exited a light rail train onto the 38th Street platform.

14. At the time, two uniformed Transit Police officers, Defendants Yang and Kruyer, were conducting ticket checks on the light rail Mr. Denny was riding.

15. As Mr. Denny peacefully exited onto the 38th Street platform, he was followed or approached by Defendants Yang and Kryuer.

16. Almost immediately and without objective basis for the use of force, Defendant Yang pushed Plaintiff over a bench, causing Plaintiff to fall to the ground.

17. Immediately after shoving Plaintiff to the ground, Defendants Yang and Kryuer descended on Plaintiff with several kicks to Plaintiff's ribs, punches and knees to

Plaintiff's face, a vascular neck restraint, commonly called a "chokehold," and charges from a TASER.

18. Plaintiff did not attempt to defend himself, resist, or fight back Defendants' assault, but Defendants Yang and Kryuer nevertheless ordered Plaintiff to "Stop resisting" while he was being beaten, shocked, choked, and cuffed.

19. Ordering a compliant suspect to "Stop resisting" is a ubiquitous tactic by police officers to attempt to justify and mitigate culpability for use of excessive force against an otherwise compliant suspect,[1] so much so that Metropolitan Transit Police training now incorporates instructions on when and how to use such commands when already applying force to a suspect.[2]

20. Following the beating, Defendants Yang and Kryuer documented Defendant Yang's welts from beating Plaintiff, instead of the bruises, welts, and wounds Plaintiff received.

21. The Transit Police officers then arrested Plaintiff under misdemeanor charges of fare evasion, obstruction of legal process, and resisting arrest.

22. After Mr. Denny had been beaten, shocked with a TASER, and arrested, Transit Police deviated from department standards by taking Mr. Denny straight to jail instead of the hospital.

---

[1] See Wilkes, Donald E. Jr. and Farmer, Lauren, "Electroshock Injustice: Fatal and Non-Fatal Taserings By Police" (2014). Popular Media. 187; Harlan Yu, "The Details Beyond Body-Worn Camera Footage", The Champion, July 2019, p. 29

[2] See Metropolitan Transit Police Training Manual, Section 303.3.3 (Pain Compliance Techniques) and 308.5 (Use of Conducted Energy Device; Verbal and Visual Warnings)

23. Following the unnecessary use of force by Transit Police, Defendants Yang and Kryuer prepared written statements falsely averring that Plaintiff took a "fighting stance" and was threatening to the officers.

24. Luckily for Plaintiff and in direct contradiction to the statements made by Defendants Yang and Kryuer, a surveillance camera on the platform captured the unprovoked, unwarranted, unreasonable, and unnecessary use of force, specifically the push, strikes, TASER use, and chokehold Transit Officers brought on the already-compliant Plaintiff.

25. Upon information and belief, the Metropolitan Council and Metropolitan Transit Police have failed to discipline Defendants Yang and Kruyer for the excessive force used against Plaintiff.

## COUNT I
### 42 U.S.C. § 1983 (Fourth Amendment – Excessive Force)
### Defendants Yang and Kryuer

26. All previous paragraphs are incorporated herein by reference as though fully set forth.

27. Plaintiff makes a claim under 42 USC § 1983 for violation of the Fourth Amendment of the U.S. Constitution.

28. On July 8, 2018, Plaintiff had a clearly-established constitutional right to be free from the use of excessive force by police officers and persons acting under the color of law during the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *Brown v. City of Golden Valley*, 574 F. 3d. 491, 499 (8th Cir. 2009); *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002)*; Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998).

29. Plaintiff did not pose any threat to Defendant Yang, Defendant Kryuer, other officers, or civilians. At worst, Plaintiff was a suspected nonviolent misdemeanant who was not fleeing or resisting arrest, and who posed little to no threat to anyone's safety. *Brown*, 574 F. 3d at 499.

30. Defendants Yang and Kryuer knew or reasonably should have known of the danger they placed Plaintiff into by their assault.

31. Defendants Yang and Kryuer pulled Plaintiff's arms back in a dangerous manner and they knew or reasonably should have known that such an action could result in pain and harm to Plaintiff.

32. Defendants Yang and Kryuer violated clearly established Metro Transit policies by placing Plaintiff in a chokehold.

33. The actions of Defendants Yang and Kruyer to place Plaintiff in a prohibited chokehold constituted clear excessive force.

34. Defendants Yang and Kryuer violated clearly established Metro Transit policies by taking Plaintiff directly to jail after using a TASER, instead of a hospital as required by written Transit Police policies.

35. Upon information and belief, the Metropolitan Council, Transit Police, and their employees have been sued before for excessive force violations, and the Metropolitan Council and Transit Police failed to investigate or take corrective action to prevent these excessive force violations from happening again.

36. Defendants' actions deprived Plaintiff of his right to be free from excessive force and they were motivated by an unconstitutional enforced policy, pattern of practice, or custom by the Transit Police and Metro Council. The Transit Police and Metro

Council do not enforce their policies prohibiting excessive force, they do not properly document incidents of force, they do not investigate allegations of excessive force, and they engage in a policy, pattern of practice, or custom of failing to reprimand or discipline any officer for excessive force.

37. Defendants' failure to address excessive force by Transit Police officers amounted to tacit approval of the use of excessive force.

38. All Defendants were state actors acting under color of state law.

39. Myron Denny suffered several injuries and emotional distress as a direct and proximate result of Defendants' conduct and failures of adhere to clearly established policies.

40. That the error and negligence of Defendants, their agents, employees and agents, which lead to the denial of claims, directly cost Plaintiff a sum in excess of $75,000.00.

41. Plaintiff also is bringing a failure to train claim, ad the involved two officers and their actions can be attributed to lack of training and oversite.

## COUNT II

**42 U.S.C. § 1981 (Fourth Amendment – Pattern or Practice of Excessive Force)**
**Defendants The Metropolitan Council & Metropolitan Transit Police**

42. All previous paragraphs are incorporated herein by reference as though fully set forth.

43. Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected under the Constitution. *Monell*, 436 U.S. at 694-95.

44. Such municipal liability exists where a city fails to properly train, supervise, and discipline its employees amounting in a deliberate indifference to one's constitutional rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989); *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985); *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983).

45. At all times relevant, Defendant Metropolitan Council and Metropolitan Transit Police had a duty to properly train, supervise, and discipline their employees and agents.

46. Defendants breached that duty, in part, by:
    a. Improperly training, authorizing, encouraging or directing officers on proper use of force.
    b. Failing to investigate allegations of excessive force.
    c. Failing to discipline officers for violations of policy related to excessive force.

47. The policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned, as evidenced by the conduct of Defendants Yang and Kruyer and the Defendant entities' failure to train, supervise, investigate, and discipline any of the officers involved in this incident amounting in a deliberate indifference to Plaintiff's constitutional rights.

48. This unconstitutional behavior of officers is carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of persons situated such as the Plaintiff.

49. Defendants Metropolitan Transit Police failed to take sufficient remedial actions to end this policy, pattern of practice, or custom within the Metropolitan Transit Police.

50. The condoning of misconduct, and the failure to end this policy, pattern of practice, or custom was a proximate cause to the injuries suffered by Plaintiff.

51. Wherefore, as a direct and proximate cause of the actions of the Defendants, Plaintiff has suffered damages in an amount in excess of one hundred thousand dollars ($100,000.00).

## COUNT IV – DECLARATORY RELIEF AGAINST ALL DEFENDANTS

52. All previous paragraphs are incorporated herein by reference as though fully set forth.

53. This suit involves an actual controversy within the Court's jurisdiction and the Court may declare the rights of Plaintiff under the Constitution and laws of the United States and the laws of Minnesota and grant such relief as necessary and proper. Plaintiff seeks declaratory relief on his behalf.

54. Plaintiff seeks declaratory judgment that Defendants' policies, pattern of practices, customs, lack of supervision, failure to train, acts, and omissions described herein violate the Fourth Amendment to the U.S. Constitution and constitute excessive force in violation of Minnesota state law.

## COUNT V – INJUNCTION AND RESTRAINING ORDER FOR TEMPORARY AND PERMANENT RELIEF

55. All previous paragraphs are incorporated herein by reference as though fully set forth.

56. Plaintiff seeks a Temporary and Permanent Injunction and Restraining Order not only the behalf of the Plaintiff, but for all citizens on the State and Federal District of Minnesota.

57. In terms of the TRO and Permanent Injunction; Plaintiff pleads that a temporary and permanent TRO and Permanent Injunction and restraining order is appropriate as:  1.  Plaintiff has a strong likelihood of success of the merits of his claims; 2.  An Injunction and Restraining Order is necessary to prevent irreparable injuries and harm to not only to Plaintiff, but the public at large.  Plaintiff also asserts his equitable claims as a private attorney general on behalf of all persons equally situated.  Police and government actors are using excessive force and covering for it by shouting "stop resisting".  The law enforcement officers/Defendants herein are using more force than necessary on the continuum of force; and using "stop resisting" as a pretext for using excessive force.

58. The use of the amount of force and tactics (including the defensive technique to avoid lawsuits and liability by simply shouting the phrase of "Stop Resisting") needs reform and the Municipality involved in this case needs to be retrained to refrain from using force beyond what is required, to be retrained on medical care following TASER Deployment, and retrained to respect diversity and cultural understanding with those of Indian descent.

59. Plaintiff is Native American Indian and a Protected Class.  He was singled out for his **Native Status, his race color, creed and national origin and was the**

**subject of excess force for these reasons. Plaintiff was a victim of police ordering him to "stop resisting" when he never did – as the videos show. The LEA (Agencies) need to be stopped from using a technique only designed to shield liability. It leads to many cases of use of excessive force and injury. But for Plaintiff's skin color and a member of a protected class, the excessive force incident would not have occurred.**

60. That attached herewith and incorporated herein by reference are the police reports and court records which will lay further specific and factual basis to this Complaint**.**

WHEREFORE, Plaintiff prays for judgement against the Defendants in a sum in excess of $75,000.00; together with his costs and disbursements incurred herein. Plaintiff is also seeing a Temporary and Permanent Injunction and Restraining Order to ensure and compel law enforcement officers in the Defendant Metropolitan Transit Police to take proper training and to ensure the agencies whom employ these LEOs instruct properly on the use of force continuum and to deconstruct the pretextual use of the phrase Stop Resisting. The Plaintiff prays for such additional relief as justice may require, together with its costs and disbursements in this action.

<u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

     August 24, 2023

Dated: _____                                                          MORRIS LAW GROUP, P.A

s/s Rich Hechter

_____
Richard Hechter (#193537)
Patrick Kennedy
Morris Law Group, P.A.
7380 France Ave S, Suite250
Edina, MN 55435
Email: rhechter@morrislawmn.com
*Attorneys for Plaintiff*